Rheba Johnson v. Scott Fetzer Company d/b/a Kirby

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-215-CV

RHEBA JOHNSON APPELLANT

V.

SCOTT FETZER COMPANY D/B/A KIRBY APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Rheba Johnson (“Johnson”) sued Appellee Scott Fetzer Company d/b/a Kirby (“Kirby”) and Carmello Rodriguez (“Rodriguez”), asserting claims for sexual harassment, negligence, assault, battery, and intentional infliction of emotional distress.  The case proceeded to trial before a jury, and at the close of Johnson’s case-in-chief, the trial court directed a verdict for Kirby.  The jury returned a verdict, and the trial court later rendered  judgment for Johnson and against Rodriguez.  Rodriguez has not appealed the judgment against him.

Johnson, however, appeals the trial court’s directed verdict for Kirby.  She claims that the trial court erred by granting the directed verdict on her sexual harassment claims because some evidence exists that she was an employee of Kirby and that the evidence supports the jury’s finding that she was subjected to unlawful sexual harassment.  She also claims that the trial court erred by granting a directed verdict for Kirby on her assault, battery, and intentional infliction of emotional distress claims because Rodriguez was a vice-principal of Kirby, rendering Kirby vicariously liable for Rodriguez’s torts.  Finally, Johnson claims that the trial court erred by granting a directed verdict for Kirby on her negligence claims because some evidence exists that Kirby maintained control over sexual harassment training and reporting concerning its area distributors and that Kirby exercised that control negligently, proximately causing her injuries and damages.  We will affirm.

II.  Factual and Procedural Background

Kirby manufactures home cleaning systems and accessories, including Kirby vacuums, which are marketed to consumers solely through in-home demonstrations.  Kirby enters into distributor agreements with distributors, who are then authorized to purchase products from Kirby and market them.  The distributors usually accomplish their in-home sales demonstrations by hiring people to act as dealers for them.  Concerning the sales demonstrations and the dealers who perform them, the Kirby distributor agreement provides:

3.  
Exclusively Consumer End-User Sales
. . . .  [A]ll Kirby Systems purchased by Distributor hereunder are purchased solely and exclusively for resale by in person demonstration to consumer end-users pursuant to [Kirby’s] marketing system, unless [Kirby] otherwise expressly authorizes in writing.  Distributor further agrees to use his best efforts to conduct the in person demonstration in the home of the consumer end-user.

. . . .

A violation of the “Exclusively Consumer End-User Sales” provision will likely result in [Kirby] terminating this Agreement . . . and/or taking any other action which it believes appropriate under the circumstances.

. . . . 

7(d) 
 Quotas
.  Distributor shall maintain at least the recommended number of active full and part-time sales personnel and shall adequately solicit and service its Area by meeting its sales frequency ratios as same may be specified by [Kirby] from time to time, or as established in policy statements which may be issued or revised from time to time by [Kirby], as the minimum requirements for distributors generally, or as may be established by [Kirby] specifically for Distributor.

Ralph J. Paul, Jr. (“Paul”) was a distributor for Kirby.  Paul enlisted Rodriguez to start a separate Kirby distributorship.  Kirby approved Rodriguez’s area distributorship, and in March 1997, Rodriguez hired Johnson to be one of his dealers and to perform in-home demonstrations of the Kirby cleaning systems in Weatherford, Texas.  While Johnson worked with Rodriguez, Rodriguez subjected her to repeated sexual harassment, including unwanted physical touching and verbal comments of a sexual nature.  One evening as Rodriguez drove Johnson to an in-home demonstration, he pulled over on a bridge outside of town, grabbed Johnson’s breasts, and tried to kiss her.  Johnson fought him off, but not before he bit her leg.  On another occasion, Rodriguez pushed Johnson against a wall in the office and started grabbing and kissing her.  Johnson reported these and other acts of sexual harassment to Paul, but no action was taken.  As a result, Johnson quit working for Rodriguez and filed a complaint with the Equal Employment Opportunity Commission (“EEOC”) in the fall of 1997.

The EEOC investigated Johnson’s complaint and issued a determination letter stating that Kirby was an employer within the meaning of Title VII of the Civil Rights Act of 1964 (“Title VII”), that the jurisdictional requirements for Johnson’s suit had been met, and that Johnson had suffered sexual harassment.  Johnson sued Rodriguez and Kirby, among others.  In this appeal, she challenges the trial court’s directed verdict for Kirby.

III.  Standard of Review

A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit.
  See Szczepanik v. First S. Trust Co.
, 883 S.W.2d 648, 649 (Tex. 1994).  A directed verdict for a defendant is proper when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery.  
Prudential Ins. Co. v. Fin. Review Servs., Inc.
, 29 S.W.3d 74, 77 (Tex. 2000); 
Ray v. McFarland,
 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.); 
see also
 T
EX
. R. C
IV
. P. 268.

In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was rendered. 
Szczepanik,
 883 S.W.2d at 649; 
White v. S.W. Bell Tel. Co.
, 651 S.W.2d 260, 262 (Tex. 1983).  
When reviewing a directed verdict on a legal issue, we consider all the evidence presented at trial, viewing it in the losing party’s favor as much “as the record allows.” 
 S.V. v. R.V.,
 933 S.W.2d 1, 8 (Tex. 1996).

IV.  Employer-Employee Relationship

Johnson argues in her first issue that there is some evidence that Kirby was an employer for purposes of her claims under the Texas Commission on Human Rights Act (hereinafter “TCHRA” or “the Act”) and, alternatively, that she possesses standing to sue Kirby even in the absence of a direct employer-employee relationship under 
NME Hospitals, Inc. v. Rennels
, 994 S.W.2d 142 (Tex. 1999).  Kirby responds that Johnson has presented less than a scintilla of evidence to support either of these theories.

The Legislature modeled the TCHRA on federal law with the purpose of executing the policies embodied in Title VII of the Civil Rights Act of 1964. 
Benavides v. Moore
, 848 S.W.2d 190, 193 (Tex. App.—Corpus Christi 1992, writ denied).  Title VII, like the Texas statute, protects employees, not independent contractors.  
Id.
  In determining whether an employment relationship is in fact an employer-employee relationship, as opposed to an independent contractor relationship, the federal courts have applied a “hybrid economic realities/common law control test.”  
Deal v. State Farm County Mut. Ins. Co. of Tex.
, 5 F.3d 117, 118-19 (5th
 Cir. 1993).  Texas courts likewise utilize this test when determining whether an employer-employee relationship exists under section 21.051 of the Act.  
Thompson v. Austin
, 979 S.W.2d 676, 681-82 (Tex. App.—Austin 1998, no pet.); 
Benavides
, 848 S.W.2d at 193.  The economic realities component of the test focuses on whether the alleged employer paid the employee’s salary, withheld taxes, provided benefits, and set the terms and conditions of employment.  
Deal
, 5 F.3d at 119
.  
When examining the control component, we focus on whether the alleged employer had the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee’s work schedule.  
Id.
 

Here, Kirby did not have the right to hire and fire dealers like Johnson, the right to supervise Johnson, or the right to set Johnson’s work schedule.  Each of these tasks was reserved to distributors, like Rodriguez.  Moreover, Rodriguez was in charge of paying Johnson’s salary; Kirby did not withhold taxes, provide benefits, or set the terms and conditions of employment.  No evidence exists that Kirby met any of the economic realities/common law control factors set forth above.  Further, no independent evidence exists of a direct employer-employee relationship between Kirby and Johnson.  
Accord Read v. Scott Fetzer Co.
, 990 S.W.2d 732, 735 (Tex. 1998) (recognizing, under similar facts, that a dealer like Johnson was an independent contractor, not an employee of Kirby).

Johnson argues, however, that the EEOC letter is some evidence Kirby was her employer.  Kirby objected to the admission of the EEOC letter and complains that it has no probative value on the issue of whether Kirby is Johnson’s employer because the letter is conclusory.
(footnote: 1)  EEOC determinations and findings of fact, although not binding on the trier of fact, are generally admissible as evidence in civil proceedings as probative of a claim 
of employment discrimination
.
(footnote: 2)  
Lindsey v. Prive Corp.
, 161 F.3d 886, 894 (5th
 Cir. 1998) (citing 
McClure v. Mexia ISD
, 750 F.2d 396, 400 (5th
 Cir. 1985)). A trial court may, however, exclude an EEOC letter that is so conclusory that it possesses very little probative value.  
Cortes v. Maxus Exploration 
Co., 977 F.2d 195, 201 (5th
 Cir. 1992); 
Lee v. Executive Airlines, Inc.
, 31 F. Supp. 2d 1355, 1357-58 (S.D. Fla. 1998).  A conclusory statement is one that does not provide the underlying facts to support the conclusion. 
Price v. Am. Nat’l Ins. Co.
, 113 S.W.3d 424, 429 (Tex. App.—Houston [1
st
 Dist.] 2003, no pet.).  An EEOC letter that does not outline, even summarily, the evidence upon which it relies for its conclusions is conclusory and possesses little or no probative value.  
Lee
, 31 F. Supp. 2d at 1357.

Here, concerning the employer-employee issue, the EEOC letter simply recites Kirby’s contentions that it was not Johnson’s employer; that Rodriguez was an independent contractor; that Rodriguez hired Johnson; and that Johnson was an independent contractor for Rodriguez; but then states, “EEOC believes there is an employer-employee relationship between the Charging Party [Johnson] and . . . Kirby Corp.”  The letter states no facts in support of this conclusion and does not outline any investigative steps taken by the EEOC to reach this conclusion.  A conclusory statement in an EEOC letter, standing alone, in the absence of independent evidence, does not constitute more than a scintilla of evidence.  
See, e.g., Columbia Plaza Med. Ctr. v. Szurek
, 101 S.W.3d 161, 169 n.4 (Tex. App.—Fort Worth 2003, pet. denied); 
see also
 
Earle v. Ratliff
, 998 S.W.2d 882, 890 (Tex. 1999) (holding defendant doctor’s summary judgment affidavit stating, “[u]se of Steffe pedicle screws and plates met the standard of care” was conclusory); 
Lee
, 31 F. Supp. 2d at 1357.  Thus, we hold that the trial court here did not err by directing a verdict for Kirby in spite of the EEOC letter’s statement concerning the employer-employee relationship between Johnson and Kirby.  This conclusory statement had no probative force and did not raise a genuine issue as to whether Kirby employed Johnson.
(footnote: 3)
 Next, Johnson argues that even if she has no direct employer-employee relationship with Kirby, nonetheless, she has standing to sue Kirby under the TCHRA based on the supreme court’s holding in 
NME Hospitals, Inc. v. Rennels. 
994 S.W.2d at 147.  
Rennels
 holds that the Act affords a claim to plaintiffs who do not stand in a direct employment relationship with the defendant if
:  (1) the defendant is an employer within the statutory definition of the act; (2) some sort of employment relationship exists between the plaintiff and the third party; and (3) the defendant controlled access to the plaintiff’s employment opportunities and denied or interfered with that access based on unlawful criteria.  
Id.
  Although Johnson may be able to meet the first two 
Rennels
 criteria, no evidence exists that Kirby controlled access to Johnson’s employment opportunities and denied or interfered with that access based on unlawful criteria.  Kirby did not have the right to hire or fire Johnson and did not set her work hours, salary, commissions, or bonuses.  Although Kirby indisputably maintained control over how its vacuum cleaners were to be sold, this exercise of control in no way denied or interfered with Johnson’s access to employment based on unlawful criteria.  Thus, Johnson did not satisfy the third prong of the 
Rennels
 test.  
See id.

Viewed in the light most favorable to Johnson, no evidence of probative force exists that Kirby employed her.  Likewise, no evidence exists concerning the third 
Rennels
 factor—that Kirby controlled access to Johnson’s employment opportunities and denied or interfered with that access based on unlawful criteria.  Accordingly, the trial court did not err by granting a directed verdict for Kirby on Johnson’s TCHRA claims.  We overrule Johnson’s first issue.
(footnote: 4)
V.  Duty to Independent Contractor

Johnson argues in her fourth issue that, even in the absence of an employer-employee relationship, Kirby owed her a duty to use reasonable care to prevent, eliminate, and provide reporting mechanisms for sexual harassment within its selling hierarchy, i.e., to protect her from Roderiguez’s sexual harassment.  Johnson claims that Kirby maintained control over sexual harassment training and reporting and exercised that control negligently, breaching its duty of care to her and proximately causing her harm.  Specifically, Johnson pleaded that Kirby was liable for negligence by:  (1) failing to take reasonable steps to stop Rodriguez’s assaultive conduct, despite having knowledge of the conduct; (2) failing to have a policy prohibiting assaultive conduct in the workplace; and (3) failing to provide adequate management training to its supervisors.  Kirby contends that less than a scintilla of evidence exists to support any finding that Kirby was negligent, so the trial court properly directed a verdict on Johnson’s negligence claim.

Whether a legal duty exists under a set of facts is a question of law. 
Thapar v. Zezulka
, 994 S.W.2d 635, 637 (Tex. 1999).  As a general rule, there is no duty to control the conduct of third persons.  
Greater Houston Transp. Co. v. Phillips
, 801 S.W.2d 523, 525 (Tex. 1990).  However, with regard to independent contractors,
 the supreme court has adopted the rule enunciated in the Restatement (Second) of Torts:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Redinger v. Living, Inc.
, 689 S.W.2d 415, 418 (Tex. 1985) (citing 
Restatement (Second) Torts 
§ 414 (1977)).  This rule applies when the general contractor retains some control over the manner in which the independent contractor’s work is performed, but does not retain the degree of control which would subject him to liability as a master.  
Id.
  In order for liability to attach, however, the general contractor’s retained right of control must be “more than a general right to order the work to start or stop, to inspect progress or receive reports.”  
Id.
; 
see also Hoecht-Celanese Corp. v. Mendez
, 967 S.W.2d 354, 356 (Tex. 1998) (holding that duty of care under section 414 arises only where retained right of control is more than general or supervisory).
  The retained right of control must extend to the operative details of the contractor’s work such that the contractor is not free to do the work in his own way.  
See Redinger
, 689 S.W.2d at 418
.
  The duty arising under Restatement section 414 is commensurate with the degree of control retained by the general contractor.  
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).

Additionally, general contractor liability results only when the retained control relates to the injury-producing activity itself.  
Clayton W. Williams, Jr., Inc. v. Olivo
, 952 S.W.2d 523, 528 (Tex. 1997).  Thus, an employer is not liable for the negligence of an independent contractor unless the employer retains the right of control or exercises actual control over the condition or activity that causes the injury.  
Id.

Johnson relies on 
Read 
as support for her argument that Kirby owed her a duty.  
Read
, 990 S.W.2d at 736.  In 
Read
, 
the plaintiff was raped in her home by a door-to-door salesman demonstrating Kirby cleaning systems as an independent contractor for a Kirby distributorship.  
Id.
 at 734.  Kirby argued that it owed no duty of care to consumers viewing Kirby in-home demonstrations performed by independent contractors.  
Id.
  The supreme court held that Kirby did have a duty to protect consumers from sexual assaults by dealers because Kirby’s distributorship agreement and its independent dealer agreement both required that all sales of Kirby products be made “solely and exclusively by in-home demonstrations to consumer end-users.” 
 Id.  
Because by these contractual provisions Kirby retained control over this operative marketing detail—mandating in-home sales of its products—the supreme court held that Kirby owed a duty to end-user consumers to exercise this retained control reasonably.  
Id.
 at 736.  In 
Read
, Kirby did not challenge the jury’s finding that it breached this duty.  
Id
. 

Here, unlike the in-home sales requirement in 
Read
, Kirby did not contractually retain control over preventing, eliminating, or providing reporting mechanisms for sexual harassment within its selling hierarchy.  The evidence shows that Kirby instituted a sales scheme hierarchy under which divisional supervisors managed distributors.  Distributors, in turn, recruited area distributors.  Distributors and area distributors then hired dealers to sell the Kirby cleaning systems.  Kirby did contractually require its distributors to follow Kirby’s policies, including Kirby’s sexual harassment policy,
(footnote: 5) and Johnson points to this as evidence of a retained right of control by Kirby.  Johnson also points to evidence that Kirby failed to distribute its sexual harassment policy to Rodriguez, failed to provide Paul or Rodriguez with training on sexual harassment prevention, failed to investigate or take action when Johnson reported the harassment to Paul, and failed to review Johnson’s complaint during its annual review of Paul’s distributorship.
(footnote: 6)  These facts are not, however,  indicative of retained control or a failure to exercise control because Kirby’s mere promulgation of a sexual harassment policy does not establish that it retained actual control.  
See Hoechst-Celanese Corp.
, 967 S.W.2d at 357-58 (holding Celanese’s insistence that Mundy observe and promote compliance with federal laws and safety guidelines did not impose an unqualified duty of care on Celanese to ensure that Mundy employees did nothing unsafe).  Thus, we hold that a general corporate policy alone is not sufficient to show control over operative details such that a duty would be imposed by the Restatement.
  See Dow Chem. Co. v. Bright
, 89 S.W.3d 602, 611 (Tex. 2002) (holding that the argument—“[b]ecause Dow provided safety procedure manuals for all its contractors and contractors’ employees, Dow exercised control sufficient to give rise to the duty of care owed to Larry Bright”—failed).  The retained right of control in 
Read
, based on a contractual in-home sales provision, 
does not support Johnson’s contention that a general corporate policy constitutes a retained right of control.

In addition to the corporate sexual harassment policy and the in-home sales requirement, Johnson also points to the following as evidence of a retained right of control by Kirby:  evidence that, because Rodriguez was at the area distributor level
(footnote: 7) of Kirby’s sales scheme, Kirby required him to have at least one office, to maintain a sales force, to adhere to company policies (including the in-home sales requirement), to limit his sales area,
(footnote: 8) and to not engage in other types of employment.  Johnson produced no evidence, however, that Rodriguez’s comments or actions relate to or stem from Kirby’s negligent exercise of control over the in-home sales requirement, the requirement that Rodriguez have at least one office, maintain a sales force, adhere to company policies, limit his sales area, or decline to engage in other types of employment.  Consequently, even if Kirby retained control over these details, they have no nexus with the injury-producing event:  Rodriguez’s sexual harassment.  
See Tidwell
, 867 S.W.2d at 23 (holding that where Exxon did not have any right to control service station security, it could not have any duty to provide same).  Thus, by neglecting to show how any control retained by Kirby led to the alleged injury-producing activity, 
vis a vis
 Rodriguez’s comments and actions, Johnson failed to prove that Kirby owed her a duty.  
See Arlen v. Hearst Corp.
, 4 S.W.3d 326, 327 (Tex. App.—Houston [1
st
 Dist.] 1999, pet. denied) (holding that Chronicle did not have type of specific control required to impose a duty under 
Redinger
 where Chronicle did not control how its independent contractor’s employees delivered newspapers).

Viewing the evidence in the light most favorable to Johnson as much as the record allows, we hold that as a matter of law Kirby owed no duty of care to Johnson to protect her from sexual harassment based on any retained right of control.  
Consequently, the trial court correctly granted a directed verdict for Kirby on Johnson’s negligence claims.  
We overrule Johnson’s fourth issue.

VI.  Independent Contractor, Not Vice-Principal

In her third issue, Johnson claims that Rodriguez was a vice-principal of Kirby and that, therefore, Rodriguez’s liability for the intentional torts of assault, battery, and intentional infliction of emotional distress were imputed to Kirby. Kirby argues that Johnson failed to present any evidence supporting her contention that Rodriguez was a vice-principal of Kirby.

A vice-principal of a corporation represents the corporation in its corporate capacity and includes persons who have authority to employ, direct, and discharge servants of the master, those engaged in the performance of nondelegable duties of the master, and those to whom a master has confided the management of the whole or a department or division of his business.  
See Mobil Oil Corp. v. Ellender
, 968 S.W.2d 917, 922 (Tex. 1998); 
Brown & Root v. Moore
, 92 S.W.3d 848, 851 (Tex. App.—Texarkana 2002, pet.denied).
 
No evidence exists that Rodriguez was a vice-principal of Kirby.  
See ANA, Inc. v. Lowry
, 31 S.W.3d 765, 771 (Tex. App.—Houston [1
st
 Dist.] 2000, no pet.) (holding no evidence existed that employee was vice-principal). To the contrary,
 Rodriguez did not execute a distributor agreement with Kirby; Rodriguez’s agreement was with Paul’s distributorship.  Although Rodriguez was required to maintain a sales force for the in-home sale of Kirby vacuums and his primary area of responsibility for sales was limited to Weatherford, Texas, these two requirements do not, as Johnson contends, make Rodriguez a vice-principal of Kirby.
  
Cf. Brown & Root
, 92 S.W.3d at 855 (holding that evidence showed employee 
was
 vice-principal when he had the authority to direct Brown & Root employees at Lone Star Steel, and Brown & Root confided in him to manage the entire Brown & Root operation at Lone Star Steel). Instead, the evidence demonstrates that Rodriguez had no power to hire or fire other distributors or divisional supervisors; his power was limited to hiring and firing his own dealers.  
See Hammerly Oaks, Inc. v. Edwards
, 958 S.W.2d 387, 392 (Tex. 1997) (holding fact that leasing agent was alone in office fell far short of establishing authority to hire and fire employees or management of a department of Hammerly Oaks).  Additionally, Kirby did not have any authority to bind Rodriguez’s distributorship, or vice versa.  Rodriguez and Kirby did not share office equipment, office space, sources of capital, bank accounts, telephone numbers, addresses, officers, directors, managers, common employees, or vendor or supplier credits.  Rodriguez was merely an independent contractor running his own Kirby distributorship or franchise.  
Cf. Kroger Texas Ltd. P’ship v. Suberu
, 113 S.W.3d. 588, 602 (Tex. App.—Dallas 2000, pet. filed) (holding Moody and Weir were vice-principals of Kroger where Moody signed police reports on behalf of Kroger and Weir was responsible for “[e]verything that is concerned with the front end”).

Because there is no evidence that Rodriguez was a vice-principal of Kirby, Kirby cannot be held liable for Rodriguez’s intentional torts of assault, battery, and intentional infliction of emotional distress.  Therefore, the trial court did not err by directing a verdict for Kirby on Johnson’s vice-principal, vicarious liability theories.  We overrule Johnson’s third issue.

VII.  Conclusion

Having overruled each of Johnson’s issues necessary for disposition of the appeal, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  November 13, 2003

FOOTNOTES
1:
Johnson offered into evidence a certified copy of the letter.  She did not call any witnesses to explain the EEOC’s investigation or conclusions.

2:
Here, the issue is whether the EEOC letter constitutes probative evidence of an employer-employee relationship between Kirby and Johnson, not whether it constitutes probative evidence of employment discrimination.

3:
In light of our holding that the EEOC’s conclusory employer-employee relationship statement bore no probative force, we do not address Kirby’s cross-point contending that the trial court erred by admitting the EEOC letter. 

4:
In light of our holding that there is no evidence of an employer-employee relationship between Kirby and Johnson, we need not consider Johnson’s second issue, in which she claims that there is some evidence that she was subjected to unlawful sexual harassment.  
See 
Tex. R. App. P.
 47.1 (providing that appellate court need only address issues necessary to final disposition of appeal).

5:
Kirby’s sexual harassment policy states, “Divisional Supervisors have the responsibility of giving leadership in their respective Divisions so as to maintain their respective Divisions free of sexual harassment.”  Kirby’s “Recommended Practice” for distributors on the “Intolerance of Any Form of Harassment” included the statement that “[t]he Kirby Company expects that each Distributor will conduct his/her business in compliance with all applicable laws and regulations.”  Another policy, entitled “Sexual Harassment Policy,” stated that “Distributors must know, you shall not permit, condone or excuse sexual harassment of any kind.”

6:
Evidence exists that Kirby expected its distributors to take steps on their own to prevent sexual harassment and to comply with the laws on sexual harassment.

7:
Rodriguez did not sign a distributor agreement with Kirby.  Instead, Rodriguez was considered an area distributor working under Paul’s distributorship.

8:
Although Kirby did honor sales made outside the “primary area of responsibility,” the evidence appears to show that such sales were discouraged.