# Supreme Court of Texas

No. 22-0843

Texas Tech University System and
Texas Tech University System Board of Regents,

*Petitioners,*

v.

Pureza "Didit" Martinez,

*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued November 30, 2023**

JUSTICE HUDDLE delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Devine, Justice Blacklock, and Justice Bland joined.

JUSTICE YOUNG filed a dissenting opinion, in which Justice Boyd and Justice Busby joined.

After over eleven years of service, Pureza "Didit" Martinez was fired by the president of the Texas Tech University Health Sciences Center. Martinez, who was seventy-two years old at the time, sued the Health Sciences Center, alleging age discrimination. The question in

this case is whether Martinez's pleadings allege facts that could support an age-discrimination claim against two *other* defendants: the Texas Tech University System and the TTU System's Board of Regents. They jointly filed a plea to the jurisdiction, arguing that they retained sovereign immunity because Martinez failed to plead allegations that could make them liable to her for age discrimination under the Labor Code. In essence, they denied being Martinez's employer. The trial court denied the plea, and the court of appeals affirmed.

We conclude that Martinez's petition does not allege facts demonstrating that the TTU System or the Board employed Martinez directly or that either one controlled access to and interfered with her employment. Martinez's petition thus fails to allege facts that affirmatively demonstrate that she has a valid age-discrimination claim against the TTU System or the Board, as opposed to the Health Sciences Center. For this reason, Martinez failed to allege a waiver of sovereign immunity, and the plea to the jurisdiction of the TTU System and the Board should have been granted. Nevertheless, because the petition does not foreclose a valid claim against those defendants, we remand to the trial court to give Martinez an opportunity to replead.

## I. Background

Martinez started working as senior assistant to the president at the Health Sciences Center in January 2008. She was promoted the next year to be the president's chief of staff. She retained that position when the Health Sciences Center hired a new president, Dr. Tedd Mitchell, in 2010.

Martinez was let go nine years later, at age seventy-two. About one month earlier, Dr. Mitchell emailed Martinez and fifteen other senior employees at the Health Sciences Center regarding the need to address succession planning as part of the university's overall strategic planning process. The email opens by mentioning Dr. Mitchell's recent discussion regarding succession planning with the Board. It goes on to describe the results of an internal analysis of employees in leadership positions, and it concludes with a request that each recipient of the email develop for Dr. Mitchell's review a succession plan for his or her individual role. We reproduce the email in its entirety because it is the centerpiece of Martinez's claims:

> Good morning everyone – Given the current whirlwind surrounding the timeline of the Legislative Session, I've not spent a lot of time on strategic planning for either [the Health Sciences Center] or the [TTU] System. However, with the session coming to a close by the end of this month, it will be time to shift gears and plan for the future.
>
> One of the areas that I have discussed with members of the [Board] is related to succession planning at both the [TTU System] as well as [the Health Sciences Center]. It is something they are quite interested in and is timely because of the current economy. Low unemployment means that recruiting becomes harder, which means we must all be quite intentional in our planning.
>
> I asked Steve Sosland to do an analysis of our current leadership, and the results illustrate why this is necessary. For members of our [President's Executive Council], the average age is 60, 62% are eligible for retirement, and of those not yet eligible for retirement, 50% will be in the next 2-5 years. This is not meant to insult anyone's age or length of employment, but rather to point out that our most important governing group is vulnerable to a precipitous change at any given time.

3

Accordingly, I am going to ask everyone to develop a written document for their own succession planning, which I would like to review as part of [the Health Sciences Center]'s strategic planning process.

Thanks to everyone for helping to square this away.

Tedd

About one month after Martinez received this email, the Health Sciences Center's budget office informed her that Dr. Mitchell had approved salary increases for her and several other members of the President's Executive Council (the same group that received the email). The next morning, however, Martinez alleges she was approached by Dr. Mitchell and told without explanation that she could no longer serve as his chief of staff. Several hours later, Dr. Mitchell emailed Martinez and stated that he had lost confidence in her ability to maintain confidentiality, making their "ongoing work together impossible." He cited an incident the night before in which a senior vice president told Dr. Mitchell that his faculty and staff had learned "from the president's office" that he was going to be fired. Martinez "vehemently den[ied]" the accusation that she had leaked this information.

Following her termination, Martinez filed a complaint with the Texas Workforce Commission, and she later sued the Health Sciences Center, Texas Tech University, the TTU System, and the TTU System's Board of Regents under Section 21.051 of the Labor Code. Her petition alleges that she was unlawfully terminated due to her age[1] and seeks damages, including front and back pay, lost wages and employee

---

[1] We express no opinion on the ultimate merits of Martinez's age-discrimination claim.

benefits, loss of earning capacity, damage to her reputation, punitive damages, and attorney's fees.

The University, the TTU System, and the Board (but not the Health Sciences Center) filed a plea to the jurisdiction.[2] They argued that immunity had not been waived as to them because Martinez did not exhaust her administrative remedies as to any defendant other than the Health Sciences Center. Martinez responded and argued that she properly exhausted her administrative remedies because her administrative charge was sufficiently broad to encompass all four defendants.

The day before the hearing on the plea to the jurisdiction, the defendants alleged, as an affirmative defense, that the University, the TTU System, and the Board (but not the Health Sciences Center) retained immunity because "they were not [Martinez]'s employer." Then, on the morning of the hearing, the defendants filed a reply brief arguing that, in addition to Martinez's failure to exhaust her administrative remedies, her claims against the University, the TTU System, and the Board should be dismissed because "they are not properly brought against [Martinez]'s employer under Texas Labor Code § 21.051."

At the hearing, the defendants conceded that jurisdiction was proper for Martinez's "actual employer," the Health Sciences Center. But they asserted that Martinez failed to allege that any of the other

_____

[2] The defendants originally did not answer, and Martinez obtained a partial default judgment against all defendants on liability. The trial court later set aside the default judgment, and that order has not been challenged in this appeal.

5

defendants was her employer, so immunity was not waived as to those defendants. In response, Martinez's counsel agreed that "[h]er employer was the Texas Tech University Health Science[s] Center." But citing this Court's opinion in *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999), Martinez argued that she could sue entities other than her employer for unlawful employment practices if those entities "controlled access" to her employment opportunities and "denied or interfered with that access based on unlawful criteria," such as age discrimination. *Id.* at 147. Relying primarily on Dr. Mitchell's succession-planning email, Martinez argued that she was terminated because the Board, as the governing body of the TTU System, decided to decrease the age of the President's Executive Council and asked Dr. Mitchell "to rectify the situation."

The trial court denied the plea to the jurisdiction, and the University, the TTU System, and the Board appealed. They argued that Martinez failed to plead sufficient allegations to demonstrate that these defendants either were her employer or satisfied the *Rennels* test.[3] The court concluded that Martinez's petition alleged sufficient facts to establish jurisdiction over the TTU System and the Board, but not the University. 683 S.W.3d 111, 116 (Tex. App.—Amarillo 2022). It therefore reversed the order as to the University, albeit with an

---

[3] The defendants also argued that Martinez failed to exhaust her administrative remedies. 683 S.W.3d 111, 116–17 (Tex. App.—Amarillo 2022). The court of appeals rejected this argument, *id.* at 117–18, and the defendants have not raised it in this Court.

opportunity for Martinez to replead.[4]  *Id.* at 118.  The court affirmed the remainder of the trial court's order.  *Id.*  The TTU System and the Board petitioned this Court for review, which we granted.

## II.  Applicable Law

Although Chapter 21 of the Labor Code clearly and unambiguously waives immunity for certain unlawful employment practices, "it is a *limited* waiver of immunity."  *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012).  Chapter 21 "waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent some evidence the [defendant] violated" Chapter 21.  *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763 (Tex. 2018).

When, as in this case, a jurisdictional plea challenges the plaintiff's pleadings, the Court determines whether the plaintiff has alleged facts that affirmatively demonstrate a court's jurisdiction to hear the cause.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  "[O]ur notice-pleading rules . . . require pleadings to not only give notice of the claim and the relief sought but also of the essential factual allegations."  *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661–62 (Tex. 2023) (citations and internal quotation marks omitted).  We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent.  *Miranda*, 133 S.W.3d at 226.  But courts "cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain."  *Flowers v. Flowers*, 407

---

[4] Neither party has challenged the court of appeals' ruling as to the University in this Court.

7

S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.). If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27.[5]

Labor Code Section 21.051 provides that "[a]n employer commits an unlawful employment practice if because of . . . age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with . . . the terms, conditions, or privileges of employment." TEX. LAB. CODE § 21.051(1). The statutory prohibition against age discrimination applies to an individual who is "40 years of age or older." *Id.* § 21.101.

The key question in this case is whether Martinez alleges sufficient facts to demonstrate that the TTU System and the Board can be liable to Martinez as an "employer" under Chapter 21. The statute defines "employer" to include a "state agency, or state instrumentality, regardless of the number of individuals employed." *Id.* § 21.002(8)(D). This Court held in *Rennels* that a plaintiff "need not show that she worked directly for the [defendant] to maintain standing under

_____

[5] We have previously analogized pleadings-based jurisdictional pleas to special exceptions. *See State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009) ("While [filing special exceptions is] available, and certainly not objectionable, we have never held that the State is precluded from challenging pleadings in a plea to the jurisdiction when it could have done so via special exceptions . . . ."); *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (noting that the outcome of granting a pleadings-based plea to the jurisdiction is similar to the outcome of granting special exceptions).

8

section 21.055."[6]  994 S.W.2d at 144.  Borrowing the Title VII standard articulated in *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), the *Rennels* Court concluded that a plaintiff may maintain a Chapter 21 claim against a defendant in the absence of a direct employment relationship if:

> (1) "the defendant is an employer within the statutory definition of the Act";
>
> (2) "some sort of employment relationship exists between the plaintiff and a third party"; and
>
> (3) "the defendant controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria."

994 S.W.2d at 147 (citations omitted).

In applying *Rennels*, our courts of appeals have consistently required evidence that the defendant exercised control over some specific aspect of the employment process and took some unlawful action consistent with that control.  For example, in *University of Texas at El Paso v. Ochoa*, the court held that a custodian employed by a staffing agency and assigned to work at UTEP raised a fact issue whether she could sue UTEP because there was evidence that UTEP had offered her a permanent position but UTEP's head of custodial services directed the agency to end her assignment there.  410 S.W.3d 327, 334–35 (Tex. App.—El Paso 2013, pet. denied); *see also Univ. of Tex.–Pan Am. v. Miller*, No. 03-10-00710-CV, 2013 WL 4818355, at *5 (Tex. App.—Austin

---

[6] Although *Rennels* involved a claim under Section 21.055 (which governs retaliation), both statutes refer to unlawful conduct by "[a]n employer," and the parties agree that *Rennels* applies to Martinez's claims under Section 21.051.

Aug. 28, 2013, no pet.) (holding that a UTPA police officer could sue the UT System because his employment required a commission through the UT System's police department and that department's director terminated his commission and recommended that UTPA fire him). In *Rennels* itself, we held that a pathologist could sue a hospital that was not her direct employer because the hospital had contractual authority to influence her employer's promotion decisions and she presented evidence that the hospital's CEO directly encouraged her employer not to promote her. 994 S.W.2d at 147–48. Conversely, in *Johnson v. Scott Fetzer Co.*, the court of appeals held that a fired vacuum-cleaner salesman could not sue the vacuum manufacturer because it only controlled how its vacuums were sold and had no right to hire or fire salespersons or set work hours, salary, commissions, or bonuses. 124 S.W.3d 257, 264 (Tex. App.—Fort Worth 2003, pet. denied); *see also Holloway v. Dall. Cnty. Hosp. Dist.*, No. 05-20-01114-CV, 2022 WL 17883799, at *17 (Tex. App.—Dallas Dec. 23, 2022, no pet.) (holding a hospital contractor's employee could not sue the hospital because the hospital's complaints about performance deficiencies did not equate to interference with his employment and the hospital's right to control who worked on its account did not indicate operational control over the contractor).

Here, of course, we are not asked to decide whether there is evidence to support Martinez's claims. The plea to the jurisdiction challenges only Martinez's pleadings. We therefore must determine whether the petition alleges sufficient facts to affirmatively

10

demonstrate that Martinez has a Section 21.051 claim against the TTU System and the Board. *See Miranda*, 133 S.W.3d at 226.

### III. Analysis

The TTU System and the Board both argue that Martinez's petition is insufficient to support a Section 21.051 claim against them. They assert the petition alleges no facts to support the third element of the *Rennels* test—that either the TTU System or the Board "controlled access to [Martinez]'s employment opportunities and denied or interfered with that access." 994 S.W.2d at 147. We agree.

In concluding that both the TTU System and the Board "controlled access" to Martinez's employment opportunities, the court of appeals relied on unpleaded provisions in the Education Code that generally describe the TTU System and the Health Sciences Center's system of governance. *See* TEX. EDUC. CODE §§ 109.001–.255, 110.01–.16. Section 109.001 states that the TTU System is "composed of all those institutions and entities presently under the governance, control, jurisdiction, and management of the [Board]" and that "[t]he governance, control, jurisdiction, organization, and management of the [TTU System] is hereby vested in the present [Board]." *Id.* § 109.001(a), (c). And Section 110.01 states that the Health Sciences Center is "a separate institution . . . under the direction, management, and control of the [Board]." *Id.* § 110.01; *see also id.* § 110.02 ("The [Board] has the same powers of governance, control, jurisdiction, and management over the Health Sciences Center as it exercises over the [TTU System] and its components."). Based on these provisions, the court of appeals concluded that the TTU System, through the Board, "is in a legal

11

position to regulate employment decisions of the [Health Sciences] Center." 683 S.W.3d at 116.

Even assuming that the Board (or the TTU System, acting through the Board) is "in a legal position" to control employment decisions at the Health Sciences Center,[7] *Rennels* requires more. To affirmatively demonstrate a Chapter 21 claim under *Rennels*, a plaintiff must allege sufficient facts that the defendant actually controlled access to the plaintiff's employment opportunities and that it denied or interfered with that access. As both *Rennels* itself and the cases that apply it have demonstrated, a defendant that is not the plaintiff's direct employer can be liable only if it had operational control over employment decisions and took direct action against the plaintiff consistent with that control. *See Rennels*, 994 S.W.2d at 147 (imposing Chapter 21 liability based on evidence that the defendant was permitted by contract to influence the plaintiff's employment status and did in fact do so); *Holloway*, 2022 WL 17883799, at *17 (rejecting a Chapter 21 claim because the defendant's contractual right of control over the plaintiff's employer did not include operational control over employees); *Johnson*, 124 S.W.3d at 264 (rejecting a Chapter 21 claim when the defendant's control did not include employment decisions).

---

[7] The TTU System and the Board argue that they cannot as a matter of law exercise control over Martinez's employment opportunities because the Board has enacted "Regents' Rules" that give each institution's president sole responsibility for making high-level appointments at that institution. Even if we were to read these "Regents' Rules" as a limit on the Board's statutory authority, the mere existence of these rules does not conclusively preclude a plaintiff from alleging that the Board, as a matter of fact, exercised *actual* control over and interfered with his or her access to an employment opportunity.

The Board's general right to "direct[], manage[], and control" the Health Sciences Center does not equate to actual control over Martinez's employment opportunities. This principle is similar to our longstanding rule, derived from the *Restatement*, that forbids imposing liability based solely on a general right of control over the work of an independent contractor. *See Koch Refin. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (AM. L. INST. 1965)); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) (holding that a general right to order work started and stopped or to inspect progress and receive reports is insufficient to establish a general contractor's liability for an independent contractor's work). We have held in such cases that a defendant is not liable unless it "controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 792 (Tex. 2006) (citing *Koch Refin.*, 11 S.W.3d at 155–56). In the same way, the Board's general right to oversee the Health Sciences Center is insufficient to demonstrate control over the details or methods of the Health Sciences Center's employment decisions. Accordingly, the provisions of the Education Code on which the court of appeals relied do not satisfy the *Rennels* standard, i.e., that the TTU System or the Board "controlled access to [Martinez]'s employment opportunities." 994 S.W.2d at 147.

The court of appeals' expansive reading of *Rennels* is problematic for two other reasons. First, it would essentially make every parent corporation liable under Chapter 21 for the employment actions of a subsidiary or affiliated entity governed by the parent. This would be

13

contrary to well-settled Texas law. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008) ("We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances."); *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) ("There must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the *alter ego* of the parent and make the parent liable for the subsidiary's tort.").

Likewise, the court of appeals erred to the extent it relied on Dr. Mitchell's dual roles, without more, to conclude that Martinez pleaded a basis for the TTU System's liability. *See* 683 S.W.3d at 117. An allegation that Dr. Mitchell simultaneously served as chancellor of the TTU System and president of the Health Sciences Center, without more, does not demonstrate that the TTU System controlled access to Martinez's employment opportunities with the Health Sciences Center. *See First Rsrv.*, 671 S.W.3d at 660–61 ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." (alteration in original) (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998))); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007) (concluding that evidence of two entities' common ownership or management, standing alone, was insufficient to establish both entities' employer status under Title VII).

The court of appeals nevertheless concluded that Martinez's allegations were sufficient to survive the plea to the jurisdiction.

14

Reading Martinez's allegations in a favorable light and "in conjunction with" the Education Code provisions vesting the Board with a general right to manage the Health Sciences Center, the court of appeals concluded that Martinez's petition "reasonably leads one to see the following picture painted": the TTU System, through its Board, "decided to rid" the Health Sciences Center of older employees and "directed" Dr. Mitchell to implement this policy, which he did. 683 S.W.3d at 116.

We conclude the facts as alleged in Martinez's petition, even when liberally construed in her favor, *see Miranda*, 133 S.W.3d at 226, cannot be read to paint that picture. No one disputes that Martinez alleged sufficient facts to support a Section 21.051 claim against her direct employer, the Health Sciences Center, through the alleged acts of its president, Dr. Mitchell. But Martinez presents no factual allegations that the TTU System or the Board, as opposed to Dr. Mitchell, controlled access to Martinez's employment and denied or interfered with that access. Contrary to the court of appeals' gloss, Martinez's petition nowhere alleges facts demonstrating that the TTU System or the Board "decided to rid" the Health Sciences Center of older employees or "directed" Dr. Mitchell to implement such a policy.

Martinez's petition includes allegations that the Board "wanted to reduce the average age of [the Health Sciences Center's] senior leadership" and that the Board "asked Dr. Mitchell to reduce the age of senior leadership at [the Health Sciences Center]." These allegations are insufficient to affirmatively demonstrate that the Board controlled access to Martinez's employment and denied or interfered with her employment. Martinez expressly rests these allegations on

15

Dr. Mitchell's email, which she attaches and references in the petition. *See City of Abilene v. Carter*, 530 S.W.3d 268, 276 (Tex. App.—Eastland 2017, no pet.) ("[A] document attached and referred to in a pleading shall be deemed a part of the pleading for all purposes." (citing TEX. R. CIV. P. 59)). Yet that email states only that the Board was interested in "succession planning"—a best practice for any institution hoping to endure beyond the short-term—because of low employment and difficulty in recruiting at that time due to a tight labor market. No reasonable reading of the email supports an allegation that the Board controlled access to and interfered with Martinez's employment.[8] *See State v. Lueck*, 290 S.W.3d 876, 885–86 (Tex. 2009) (analyzing the plaintiff's pleadings together with an attached email and concluding they affirmatively negated the existence of an alleged violation of the Whistleblower Act against TxDOT).[9]

---

[8] Indeed, succession planning frequently is accomplished by cross-training existing employees to create redundant knowledge within an organization. It does not require terminating anyone but only distributing knowledge within an institution to guard against the disruption that results from the departure of an employee who was the single repository of key information. *See generally* CHRISTEE GABOUR ATWOOD, SUCCESSION PLANNING BASICS 13 (2d ed. 2020) (ebook) ("The purpose of succession planning is to prepare your organization for the challenges and opportunities associated with changes in critical key positions. You'll accomplish this by developing employees to ensure that you have qualified candidates ready to fill those key positions when a vacancy occurs."); WILLIAM J. ROTHWELL, EFFECTIVE SUCCESSION PLANNING 6 (4th ed. 2010) ("[Succession planning] is thus a deliberate and systematic effort by an organization to ensure leadership continuity in key positions, retain and develop intellectual and knowledge capital for the future, and encourage individual advancement.").

[9] The dissent points to a letter from the U.S. Equal Employment Opportunity Commission, also attached to Martinez's petition, that

16

Martinez also alleges that Dr. Mitchell terminated her "to appease the Board of Regents" by lowering the average age of his senior advisors. At most, this allegation may demonstrate Dr. Mitchell's motivation. But it is insufficient to support a claim that the TTU System or the Board—neither of which is alleged to be Martinez's direct employer—exercised control over Dr. Mitchell's decision to terminate Martinez herself, much less that it directed him to do so.

In sum, Martinez's petition fails to allege that the TTU System or the Board "controlled access" to Martinez's employment opportunities and "interfered with that access." The petition therefore does not allege facts that affirmatively demonstrate a Section 21.051 claim against the TTU System or the Board under *Rennels*.[10] Given this, and the absence

_____

purportedly "corroborates" Martinez's allegations. *Post* at 10 (Young, J., dissenting). In that letter, the EEOC finds "there is reasonable cause to believe that *Respondent*"—expressly defined in the letter to be the Health Sciences Center—"discharged [Martinez] because of her age." (Emphasis added.) But whether the letter corroborates Martinez's claim against the Health Sciences Center is irrelevant because, as we noted, the Health Sciences Center does not contest jurisdiction. The more important point to be gleaned from the EEOC letter is that it makes no findings *about the TTU System or the Board*, the only two entities over which the trial court's jurisdiction remains in question.

[10] Our dissenting colleagues assert that our decision is inconsistent with the standard that we construe the pleadings liberally. *Miranda*, 133 S.W.3d at 226; *see post* at 7 (Young, J., dissenting). But like the court of appeals, their approach departs from our precedents by prioritizing the pleader's intent over the pleadings themselves. Rather than look to Martinez's allegations and construe them in light of her intent, the dissent appears to suggest we should focus on her intent and then determine whether her petition "permit[s] the inference" that she has alleged a claim under *Rennels* against the TTU System and the Board. *Post* at 11 (Young, J., dissenting). We rejected a similar argument in *County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002). There, we held that the plaintiffs' allegation that failed lighting on a causeway

17

of any other alleged basis for imposing liability against the TTU System or the Board—as opposed to the Health Sciences Center, which concedes it employed Martinez and does not contest jurisdiction—the trial court should have granted the plea to the jurisdiction with respect to the TTU System and the Board.

The TTU System and the Board seek rendition of judgment and dismissal of Martinez's claim against them. But as the defendants conceded in their briefing in the court of appeals, their jurisdictional plea challenged only Martinez's pleadings.

Ordinarily, when a jurisdictional plea challenges only the pleadings, the remedy is to remand for an opportunity to replead. *Miranda*, 133 S.W.3d at 226–27. That remedy is particularly appropriate here. The TTU System and the Board did not expressly assert that they might not qualify as an "employer" under Chapter 21 until they filed their answer the day before their jurisdictional plea was heard. Until then, Martinez might have been unaware of the need to plead factual allegations to establish the elements for imposing liability under *Rennels*.

Martinez may well be able to cure this pleading deficiency on remand. As our dissenting colleagues correctly suggest, repleading to satisfy *Rennels* may not be a heavy lift given the facts Martinez has

---

constituted a premises defect was insufficient, and a plea to the jurisdiction should have been granted, because the plaintiffs failed to allege that they did not actually know of the condition, a "necessary premises-defect element." *Id.* at 558. "Moreover, we disagree with the court of appeals' conclusion that we can infer this element from the pleadings." *Id.* Like here, the Court remanded to allow the plaintiffs an opportunity to replead. *Id.* at 558–59.

already alleged. But *Rennels* requires that Martinez allege facts regarding *both* the exercise of control and interference with Martinez's employment *by each* of the TTU System and the Board. We decline our dissenting colleagues' invitation to dilute those requirements, even if Martinez's live pleading falls just short of the mark.[11]

## IV. Conclusion

Martinez failed to allege facts that affirmatively demonstrate the court's jurisdiction over her claims against the TTU System or the Board because, as currently pleaded, her petition does not contain sufficient facts to demonstrate that either the TTU System or the Board could be liable to her under Section 21.051. The trial court therefore should have granted the TTU System and the Board's plea to the jurisdiction. But because Martinez's petition does not affirmatively demonstrate that she cannot cure the jurisdictional defect, she should be afforded an opportunity to replead. We therefore reverse the court of appeals' judgment in part and remand to the trial court for further proceedings.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 14, 2024

---

[11] Martinez also asserts that discovery may reveal documents demonstrating that the TTU System in fact was her direct employer at one time. That theory, if pleaded, may well be sufficient to defeat a jurisdictional plea by the TTU System. But it is nowhere pleaded in Martinez's live petition and therefore cannot serve as a basis for denying the plea at this stage.