NME HOSPITALS, INC. d/b/a Sierra
Medical Center, Petitioner,

v.

Margaret A. RENNELS,
M.D., Respondent.

No. 98–0487.

Supreme Court of Texas.

Argued Dec. 9, 1998.

Decided June 3, 1999.

Rehearing Overruled July 1, 1999.

Kenneth R. Carr, Yvonne K. Puig, Cynthia S. Anderson, El Paso, for Petitioner.

Dennis L. Richard, Bryan H. Hall, El Paso, for Respondent.

Justice HANKINSON delivered the opinion of the Court.

Today we consider an issue of first impression for our Court: whether a plaintiff may sue someone other than her own employer for an unlawful employment practice under Texas Labor Code § 21.055, the Texas Commission on Human Rights Act. Dr. Margaret Rennels sued NME Hospitals, Inc. d/b/a Sierra Medical Center (the Hospital), for unlawful employment discrimination under the Act and conspiracy to violate the Act. The Hospital moved for summary judgment on the ground that Rennels could not sue it under section 21.055 because it was not her direct employer. The trial court granted the Hospital's motion. A divided court of appeals reversed and remanded, concluding that the Act may apply even absent a direct employer-employee relationship between the plaintiff and the defendant. 965 S.W.2d 736, 739–40. We affirm the court of appeals' judgment.

The summary judgment evidence reveals the following facts. Rennels worked as a pathologist for Sierra Laboratory Associates as a paid associate. The Hospital was Sierra's primary client. The relationship between Sierra and the Hospital was governed by two agreements. Under the "Pathology Agreement," Sierra had the exclusive right to set up the Hospital's pathology department and perform all pathology work for the Hospital. According to the agreement, among other things, the Hospital designated Sierra's duties and dictated how the department was to be set up, retained approval authority over the director of the department, retained the right to reject any substitute pathologists, controlled how Sierra prepared all financial, statistical, and medical reports, and prohibited Sierra and its pathologists from contracting to perform services for any other hospital without prior consent. Sierra and the Hospital also entered into a "Directorship Agreement," under which the Hospital detailed the pathology department director's duties, including how many pathologists the director was required to keep on staff. That agreement also permitted the Hospital to terminate the pathology agreement if Sierra transferred any ownership interest in Sierra without the Hospital's prior written consent.

Sierra terminated Rennels on September 9, 1993, citing difficulties between Rennels and another associate, Dr. Jorge Bilbao. Rennels alleged that the termination constituted sex discrimination, as evidenced by the fact that Bilbao was in a position similar to Rennels', yet received bonuses and financial information like a shareholder, was named the successor to the exclusive agreement with the Hospital, and was allowed to participate in decisions about Rennels' future employment with Sierra. Rennels was reinstated on September 18, 1993, but on September 22, Sierra advised Rennels to take a paid leave of absence. On October 7, 1993, Rennels' attorney notified the Hospital that Rennels was opposing Sierra's alleged discriminatory practice.

Rennels returned to work later that year, and in early 1994, Sierra informed her by letter that she would be made a shareholder once the necessary paperwork was completed. On April 4, 1994, Rennels overheard a conversation between Marcus Fry, the Hospital's chief executive officer, and Dr. Judy Pester, a Sierra shareholder. She heard Fry tell Pester that he would not allow Rennels to become a Sierra shareholder, and heard Pester respond that she would do whatever was needed to prevent Rennels from becoming a shareholder. Nearly four weeks later, Sierra's attorneys informed Rennels that she would not be made a shareholder, and that Rennels could continue her employment only if she signed a release of any sex discrimination claims against both Sierra and the Hospital. Rennels refused to sign a release, and later filed a discrimination claim with the Equal Employment Opportunity

Commission. Sierra terminated Rennels on May 25, 1994.

Rennels sued the Hospital for retaliatory discharge under section 21.055 and for conspiracy to violate the Act. The Hospital moved for summary judgment on both claims. As to the section 21.055 claim, the Hospital alleged that Rennels could not sue the Hospital for violation of section 21.055 because the Hospital was not her direct employer. As to the civil conspiracy claim, the Hospital alleged that Rennels did not have standing to bring that claim because she did not have standing to sue under section 21.055. The trial court rendered summary judgment in favor of the Hospital on both claims.

The court of appeals reversed the summary judgment and remanded the case to the trial court. 965 S.W.2d at 740. The court first held that a plaintiff need not allege a direct employment relationship with a defendant-employer in order to maintain standing to sue under section 21.055. Rather, the court concluded that a plaintiff can proceed on a showing that the defendant in some way interfered with the plaintiff's employment opportunities with her employer. As Rennels could maintain her section 21.055 claim, the court then held that she could also maintain her civil conspiracy claim. We granted the Hospital's petition for review. We examine first the section 21.055 claim, and then the civil conspiracy claim.

■ The Hospital complains that the court of appeals improperly concluded that Rennels has standing to sue under section 21.055 in the absence of a current or potential employment relationship with the Hospital. Rennels responds that she need not show that she worked directly for the Hospital, but rather that the Hospital had sufficient power, control, or influence so as to be able to adversely affect her employment relationship with Sierra. We agree that Rennels need not show that she worked directly for the Hospital to maintain standing under section 21.055.

Section 21.055 provides that:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

(1) opposes a discriminatory practice;

(2) makes or files a charge;

(3) files a complaint; or

(4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

TEX. LAB.CODE § 21.055. The Texas Commission on Human Rights Act is modeled after federal civil rights law. One express purpose of the Act is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB.CODE § 21.001(1). The Act purports to correlate "state law with federal law in the area of discrimination in employment." *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991); *City of Austin v. Gifford*, 824 S.W.2d 735, 739 (Tex.App.-Austin 1992, no writ). Thus, in light of the Legislature's express purpose, we look to analogous federal precedent for guidance when interpreting the Texas Act. *See Schroeder*, 813 S.W.2d at 485; *Holt v. Lone Star Gas Co.*, 921 S.W.2d 301, 304 (Tex.App.-Fort Worth 1996, no writ); *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

Title VII prohibits an "employer" from discriminating against an "individual," and allows a "person claiming to be aggrieved" to file suit. *See* 42 U.S.C. §§ 2000e–2, 2000e–5. While a plaintiff must show an employment relationship to sue under Title VII, *see Broussard v. L.H. Bossier*, 789 F.2d 1158, 1159 (5th Cir.1986), many courts have held that a direct employment relationship between a plaintiff and defen-

dant is not necessary, so long as the plaintiff can show that the defendant-employer controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria. The seminal case allowing suit under Title VII in the absence of a direct employment relationship between the plaintiff and defendant is *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973).

In *Sibley*, the District of Columbia Circuit held that a plaintiff maintained standing to sue under Title VII, despite the absence of a direct employment relationship between the plaintiff and the defendant. *Id.* at 1341–42. The court reasoned that, because Title VII uses the term "person aggrieved" instead of "employee," and provides no words of limitation to the contrary, it "purports to provide remedies for a class broader than direct employees." *Id.* at 1341. The court emphasized that the statute applies explicitly to labor unions and employment agencies, which would not directly employ a particular plaintiff, but which nonetheless have "a highly visible nexus with the creation and continuance of direct employment relationships between third parties." *Id.* at 1342. The court further explained why limiting standing to the defendant's employees would contravene the intent of Congress:

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very crite-

ria for employment that Congress has prohibited.

*Id.* at 1341.

Every federal circuit to squarely address this issue has followed *Sibley's* lead.[1] *See Bender v. Suburban Hosp. Inc.*, 159 F.3d 186, 188 (4th Cir.1998) (collecting cases). These courts have adopted *Sibley's* reasoning in recognizing that a plaintiff has standing when the plaintiff can show that the defendant interfered with the plaintiff's employment relationship, despite the absence of a direct employment relationship between the plaintiff and defendant. *See, e.g., Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 874–75 (6th Cir.1991); *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294–95 (11th Cir.1988); *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021–22 (9th Cir.1983); *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1062–63 (2nd Cir.1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *see also Graves v. Lowery*, 117 F.3d 723, 728 (3rd Cir.1997) (discussing *Sibley* standing); *Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 18 (1st Cir.1994) (refusing to rule out possibility that *Sibley* analysis may be appropriate under Title I of the Americans with Disabilities Act).

The Hospital argues that we should reject this authority in favor of that established by the Fifth Circuit, which the Hospital claims rejected *Sibley* standing in *Bloom v. Bexar County*, 130 F.3d 722, 725 (5th Cir.1997). In *Bloom*, the court affirmed summary judgment for the defendant under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, on the basis the defendant was not Bloom's employ-

---

1. Many federal district courts have also recognized "*Sibley* standing." *See Diana v. Schlosser*, 20 F.Supp.2d 348, 350–52 (D.Conn. 1998); *Moland v. Bil–Mar Foods*, 994 F.Supp. 1061, 1073 (N.D.Iowa 1998); *Richard v. Bell Atl. Corp.*, 976 F.Supp. 40, 46 (D.D.C.1997); *Morrison v. American Bd. of Psych. & Neurol., Inc.*, 908 F.Supp. 582, 585–87 (N.D.Ill.1996); *Daniels v. Allied Elec. Contractors, Inc.*, 847 F.Supp. 514, 519–20 (E.D.Tex.1994); *King v. Chrysler Corp.*, 812 F.Supp. 151, 153–54 (E.D.Mo.1993); *LeMasters v. Christ Hosp.*, 777 F.Supp. 1378, 1380 (S.D.Ohio 1991); *Vakharia v. Swedish Covenant Hosp.*, 765 F.Supp. 461, 463 (N.D.Ill.1991); *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 708 F.Supp. 233, 235 (W.D.Ark.1989).

er. Bloom argued by analogy to Title VII cases that the defendant need not have been her direct employer to be liable under the ADA. Citing *Fields v. Hallsville Independent School District,* 906 F.2d 1017, 1019 (5th Cir.1990), and *Diggs v. Harris Hospital–Methodist, Inc.,* 847 F.2d 270 (5th Cir.1988), the court concluded that "Fifth Circuit precedent as to Title VII, however, is to the contrary; therefore, Bloom's analogy, even if accepted, would be unavailing." 130 F.3d at 725. *Fields* and *Diggs,* however, do not support the general proposition that *Sibley* standing is categorically not recognized in the Fifth Circuit. In both *Fields and Diggs,* the court ruled not on whether a plaintiff could invoke *Sibley* standing by showing a defendant's interference with the plaintiff's employment with a third party, but rather on whether a direct employment relationship existed between the plaintiff and the defendant. *See Fields,* 906 F.2d at 1018–19; *Diggs,* 847 F.2d at 271–72 (5th Cir. 1988); *see also Deal v. State Farm County Mut. Ins. Co. of Tex.,* 5 F.3d 117 (5th Cir.1993); *Daniels v. Allied Elec. Contractors, Inc.,* 847 F.Supp. 514, 520 (E.D.Tex. 1994) (concluding that, six years after *Diggs,* the Fifth Circuit had not yet resolved the issue of *Sibley* standing, and thus "unconstrained by contrary authority," permitting plaintiff to maintain such standing). A close review of these cases reveals that the Fifth Circuit has never directly addressed a squarely presented *Sibley* scenario. Thus we do not view the Fifth Circuit precedent to be as clear as the Hospital argues, and accordingly decline the Hospital's invitation to reject the weight of contrary authority. *Cf. Glen Ridge I Condominiums, Ltd. v. Federal Sav. & Loan Ins. Corp.,* 734 S.W.2d 374 (Tex.App.—Dallas 1986), *writ denied per curiam,* 750 S.W.2d 757, 759 (Tex.1988) (supreme court explaining that the "Ninth Circuit's analysis represents the better-reasoned interpretation" of federal receivership statute over contrary interpretation by the Fifth Circuit).

■ We agree with *Sibley* and the cases following it that Title VII does not require a direct employment relationship between the parties. Thus, in order to harmonize federal and state common law, we conclude that a plaintiff may likewise maintain standing under the Texas Act in the absence of a direct employment relationship with the defendant by meeting the *Sibley* requirements. Section 21.055 does not expressly require an employment relationship between the employer who violates the statute and the person who is harmed by the violation. The statute uses the term "person" instead of "employee," thus encompassing those who do not maintain a direct employment relationship with the defendant. Furthermore, as section 21.055 expressly prohibits retaliation or discrimination by an "employer, labor union, or employment agency," the Texas Legislature has recognized that those other than the plaintiff's direct employer may, under certain circumstances, be in a position to interfere with a person's employment relationships or access to employment. Such an interpretation directly advances two of the express purposes of the Texas Act by "provid[ing] for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," and "secur[ing] for persons in this state, ... freedom from discrimination in certain employment transactions, in order to protect their personal dignity." TEX. LAB.CODE § 21.001(1), (4). To hold otherwise would be antithetical to the purpose of, and progress accomplished by, both federal and state civil rights legislation. *See Diggs,* 847 F.2d at 273 ("Because Title VII is remedial and humanitarian in nature, it should be liberally construed, resolving ambiguities in favor of the complainant."). Therefore, relying on the express wording of the Texas Act, and construing the Act liberally and in conformity with analogous federal precedent, we recognize that the Act affords a claim to people who do not stand in a direct employment relationship with the defendant-employer. We disapprove

of *Guerrero v. Refugio County,* 946 S.W.2d 558 (Tex.App.—Corpus Christi 1997, no writ), to the extent it holds that an employment relationship must exist between the plaintiff and defendant.

■ To maintain *Sibley* standing, a plaintiff must show that an employer within Title VII, using its position of power and control, adversely and wrongfully interfered with the plaintiff's employment relationship with a third party. *See Gomez,* 698 F.2d at 1021; *Sibley,* 488 F.2d at 1341–43; *Morrison,* 908 F.Supp. at 586. Adapting these elements to the Texas Act, we conclude that a plaintiff must show: (1) that the defendant is an employer within the statutory definition of the Act, *see* TEX. LAB.CODE § 21.002;(2) that some sort of employment relationship exists between the plaintiff and a third party,[2] *see Bender,* 159 F.3d at 188; *Alexander v. Rush N. Shore Med. Ctr.,* 101 F.3d 487, 491–92 (7th Cir.1996); and (3) that the defendant controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria. *See Sibley,* 488 F.2d at 1342 (proper defendants may include those "who are neither actual nor potential direct employers of particular complainants, but who control access to such employment and deny such access by reference to invidious criteria"); *see also Christopher,* 936 F.2d at 876; *Zaklama,* 842 F.2d at 294–95; *Spirt,* 691 F.2d at 1063; *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 595 F.2d 711, 723 (D.C.Cir.1978).

■ The parties do not dispute that the first two elements are met in this case. The Hospital is an employer under the Texas Act, and Rennels maintained a direct employment relationship with a third party, Sierra. As to the third element, whether the Hospital controlled access to Rennels' employment opportunities with Sierra and denied or interfered with that access based on unlawful criteria, Rennels submitted summary judgment evidence revealing that the Hospital was in a position to exert some control over Sierra's employment decisions. The contracts between the Hospital and Sierra specifically gave the Hospital control over certain employment issues, and in particular Sierra could not transfer any ownership interest without the Hospital's consent. These contracts put the Hospital in a position in which it was able to influence whether Rennels became a Sierra shareholder. Rennels also offered evidence that Sierra informed her that it intended to make her a shareholder, but that following direct interference by the Hospital's chief executive officer, she was told she would not be made a shareholder. She also offered evidence that the Hospital knew of Rennels' initial sex discrimination charge. Viewing this evidence in a light most favorable to Rennels, and resolving all reasonable inferences in her favor, *see Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985), we conclude that Rennels has shown that the Hospital was in a position to interfere with her employ-

**2.** *Sibley* is unclear on whether a direct employment relationship between the plaintiff and a third party is necessary or whether the defendant's interference with an independent contractor or prospective employment relationship will suffice. Several courts addressing this issue have required an actual employment relationship between the plaintiff and a third party, which is often established by using the "economic realities/common law control" test. This test considers the economic realities of employment, but relies on the degree of control over the employee's conduct as the main factor in determining the existence of an employment relationship for Title VII purposes. *See, e.g., Alexander,* 101 F.3d at 492–493; *Diggs,* 847 F.2d at 272; *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 341 (11th Cir. 1982); *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979). Regardless of whether a plaintiff need show a direct employment relationship with a third party to have *Sibley* standing, the general rule of *Sibley* that, upon the requisite showing a plaintiff may sue a defendant who is not her direct employer, remains nearly universally accepted. As the parties do not dispute that Rennels maintained a direct employment relationship with Sierra, we do not decide the type of employment relationship between the plaintiff and a third party necessary to invoke *Sibley* standing under the Texas Act.

ment relationship with Sierra, and she therefore has *Sibley* standing under the Texas Act. Accordingly, the trial court erred when it granted the Hospital's summary judgment based on Rennels' lack of standing.

The Hospital also complains that the court of appeals erred in reversing the summary judgment on Rennels' civil conspiracy claim. The Hospital asserts that a claim for conspiracy to violate the Act is a derivative claim that must fail when the underlying action fails. As this is the Hospital's only argument for rejecting Rennels' civil conspiracy claim, and we have concluded that Rennels maintains standing to assert a claim for violating the Act, the Hospital in not entitled to summary judgment on the conspiracy claim. Accordingly, we affirm the judgment of the court of appeals.