# Supreme Court of Texas

No. 22-0940

Texas Tech University Health Sciences Center–El Paso,

*Petitioner*,

v.

Loretta K. Flores,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

JUSTICE YOUNG, concurring.

Texas law forbids employers from making employment decisions "because of race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. Cases like today's, however, suggest that the legal system inadequately distinguishes actual discrimination from disappointment in employment results. True, the system worked in the sense that the Court reached the right result—but only after extended litigation that clouded a legitimate hiring decision by a high-ranking state university leader. The consequences extend to the person he hired as his chief of staff. She was not sued, but she may as well have been; this

lawsuit has subjected her to the oblique but public accusation that she was *not* the best candidate, that her hiring was unlawful, and that her mere occupancy of the position robbed someone else of a basic civil right. The effects of drawn-out litigation like in this case can be exceptionally harmful to individuals and institutions. Only if the conduct at issue plausibly *was* discriminatory would such harm to others be justifiable.

The balance is delicate. Too quickly ending any case risks undermining the parties' rights *and* risks undermining confidence in the legal system. Yet drawing out cases that clearly lack merit does all that too. The antidiscrimination context adds even more delicacy. An open admission that an adverse employment decision was made "because of" a characteristic that Texas law protects is hen's-teeth rare, so direct evidence is typically unavailable. But when claims have nothing to do with discrimination, the courts' inability to rapidly say so dilutes the force of and respect for antidiscrimination law itself. Ensuring that our law expeditiously and accurately targets *actual discrimination* would be a benefit all around.

The evidentiary framework for the opening stages, then, is of great significance. As far as I can see, this Court has never really given much thought to the burden-shifting framework that we use, which we borrowed from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973). The first time we invoked *McDonnell Douglas* to address burden shifting came in 1995, when we *rejected* its application in the context of the Whistleblower Act. *See Tex. Dep't of Hum. Servs. v. Hinds*, 904 S.W.2d 629, 637 (Tex. 1995). We noted that the U.S. Supreme Court had adopted burden shifting for Title VII claims but held that we were "not at

2

liberty to adopt this approach" because the Whistleblower Act expressly placed the burden of proof on the employee. *Id.*

Chapter 21 does not have a burden-of-proof provision that mirrors the one we addressed in *Hinds*, so that case does not directly govern our reading of Chapter 21. Five years later, we took a Chapter 21 case and, in a *per curiam* opinion, adopted *McDonnell Douglas* for the first time. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000). Our analysis was, shall we say, sparse. In total, we said:

> In enacting the TCHRA, the Legislature intended to correlate state law with federal law in employment discrimination cases. Tex. Lab.Code § 21.001; *see NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex. 1999). Adhering to legislative intent, Texas courts have looked to federal law in interpreting the TCHRA's provisions.

*Id.* Section 21.001 expresses as a "general purpose[]" of the statute to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab. Code § 21.001(1). With no more analysis than that, *M.D. Anderson* simply cited *McDonnell Douglas* (and three other U.S. Supreme Court cases) and then conducted the "burden-shifting analysis" as we would have done in federal court under federal law. 28 S.W.3d at 24. After that, we expressly invoked *McDonnell Douglas* to conduct burden shifting in these five cases: *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473 (Tex. 2001); *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735 (Tex. 2003); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629 (Tex. 2012); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572 (Tex. 2017); *Alamo Heights Indep. Sch. District v. Clark*, 544 S.W.3d 755 (Tex. 2018). Our sixth occasion was in

3

the first visit to this Court by the very parties before us today: *Texas Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).

As far as I can tell, none of these decisions actually wrestled with how *McDonnell Douglas* got to be part of our law. *M.D. Anderson* appears to be the only time we have actually stated any rationale, which I quoted in full above, thin as it is.

As Justice Blacklock has previously suggested, we may have assumed too much in linking a general goal (consistency with federal law) to a specific mechanism to achieve that goal. *See Texas Tech Univ. Health Scis. Ctr.–El Paso v. Niehay*, 671 S.W.3d 929, 945–46 (Tex. 2023) (Blacklock, J., concurring). Reexamination may confirm the propriety of accepting into our law the *McDonnell Douglas* framework (or something much like it) and its progeny—or perhaps not. If not, it strikes me as at best unclear how a variety of doctrines, including *stare decisis* and liquidation, may affect our response. The analysis is worth undertaking if a case presents the question. As Justice Blacklock observes, *this* case does not give the Court such an opportunity: "These parties do not suggest we have any alternative, although future parties are welcome to do so." *Ante* at 7 (Blacklock, J., concurring). The Court properly resolves today's case under current law as briefed by the parties.

If and when a proper case comes, though, I hope that the parties and amici will be prepared to assist us in either confirming or improving our jurisprudence. Doing so might be more complex than merely a thumbs-up-thumbs-down call on *McDonnell Douglas*. A second aspect of the question may ultimately be both more intricate and more nuanced: whether, even if the current burden-shifting framework or something like

4

it remains, courts can better deploy it.  Perhaps we can refine the *kind* of evidence deemed sufficiently probative at each stage, which will facilitate sorting conduct that the statute forbids (decisions made "because of" the off-limits characteristics) from conduct that in no way warrants a charge of discrimination.  And, of course, regardless of what this Court decides, the legislature is always free to improve the administration of Chapter 21 if it concludes that refinements would better serve the interests of all Texans and more effectively vindicate the antidiscrimination principles that motivated Chapter 21's enactment in the first place.

For today's case, therefore, I am pleased to concur.  The Court has done an admirable job of applying current law, proving that despite the concerns that I have expressed, the right result is still possible (albeit late).  I also join Justice Blacklock's concurring opinion and in particular his call for careful examination of the jurisprudential underpinnings of this area of the law.

Evan A. Young
Justice

**OPINION FILED:** December 31, 2024

5